E-FILED
Friday, 14 January, 2022  11:24:52 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

MARIA E. CUPI,            )
                             )
     Plaintiff,         )
                             )
        v.             )     Case No.  1:21-cv-01286
                             )
CARLE BROMENN MEDICAL    )
CENTER,                  )
                             )
     Defendant.     )

## ORDER & OPINION

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. 8). Plaintiff has Responded (doc. 11), so this matter is ripe for review. For the following reasons, the Motion is granted.

### BACKGROUND[1]

Plaintiff Maria E. Cupi filed the instant lawsuit against her former employer, Defendant Carle Bromenn Medical Center, following Defendant's decision to terminate her employment. (Doc. 1). Plaintiff alleges her termination constitutes a violation of Title VII of the Civil Rights Act of 1964 (Count I), the Americans with Disabilities Act of 1990 (ADA) (Count II), and Illinois public policy (Count III) and claims Defendant failed to pay wages due in violation of the Illinois Wage Payment and Collection Act (Count IV) and the United States Fair Labor Standards Act

---

[1] The facts in this section are derived from the docket and Complaint and, consistent with the applicable legal standard, are accepted as true while considering the instant Motion. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

(FLSA) (Count V). (Doc. 1). In the instant Motion, Defendant seeks dismissal of Counts II and III under Federal Rule of Civil Procedure 12(b)(6). (Doc. 8 at 1).

The facts relevant to Counts II and III are as follows. Plaintiff was hired by Defendant in July 2019. (Doc. 1 at 3). On October 2, 2020, Plaintiff called in sick with a fever and reported she had been exposed to COVID-19. (Doc. 1 at 3). Defendant agreed Plaintiff could not work her scheduled shift that day and advised that her absence was covered by Defendant's COVID-19 policy. (Doc. 1 at 3–4, 13). The next day, Plaintiff tested negative for COVID-19. (Doc. 1 at 4). On October 5, Defendant informed Plaintiff she could return to work. (Doc. 1 at 4). She was scheduled to work the following day (October 6), and Plaintiff's supervisor asked her to arrive early to help move patients; when she arrived, she was called into her supervisor's office, where she was terminated for violating Defendant's attendance policy. (Doc. 1 at 4, 14). The termination letter cited the October 2 absence as one of several alleged violations. (Doc. 1 at 4, 14).

## LEGAL STANDARD

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain a "short and plain statement of the [plaintiff's] claim" sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to anticipate defenses or plead

extensive facts or legal theories; rather, the complaint need only contain enough facts "to present a story that holds together." *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit has consistently noted the essential function of Rule 8(a)(2) is to put the defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) ("A complaint must 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " (quoting *Twombly*, 550 U.S. at 555)).

On review of a Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citing *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). This means "accept[ing] all of the well-pleaded facts as true and 'draw[ing] all reasonable inferences [from those facts] in favor of the plaintiff.' " *Id.* (quoting *Kubiak*, 810 F.3d at 480–81). The court "may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc.* 781, 947 F.3d 464, 469 (7th Cir. 2020). " 'Naked assertions devoid of factual enhancement' [are] insufficient." *Dabbs v. Peoria Cnty. Ill.*, No. 1:16-cv-01463, 2017 WL 3574999, at \*2 (C.D. Ill. Jan. 12, 2017) (quoting *Iqbal*, 556 U.S. at 678), *aff'd*, 690 F. App'x 416 (7th Cir. 2017)).

## DISCUSSION

The Court will consider Defendant's requests to dismiss Counts II and III, respectively.

3

## I.  Count II Fails to State a Claim under the ADA

Plaintiff's claim for relief under the ADA is both indiscernible and incredible. She alleges she "had a fever, which is a symptom of COVID-19, on the day [Defendant] documented as her third attendance violation occurrence. This condition was a physical impairment and considered a disability under the ADA that substantially limited her strength and stamina." (Doc. 1 at 8). She further alleges "[e]mployers, under the ADA, are required to make reasonable accommodations for employees based on their actual or perceived disability" and then appears to suggest her termination was both discriminatory *and* a failure to accommodate a disability. (Doc. 1 at 8). The Complaint does not specify whether Plaintiff claims her fever itself was a disability or whether she claims Defendant discriminated against her because it perceived her as having a disability in the form of a fever or COVID-19. Her Response does little to clear the confusion. It refers to her disability as her "fever and illness" (doc. 11 at 4), states she believed she had COVID-19 (doc. 11 at 5), and goes on to argue—at length—COVID-19 can constitute a disability per recent guidance from the Equal Employment Opportunity Commission (EEOC) (doc. 11 at 5–6). It also summarizes her claim as arising from being "fired due to her disability or perceived disability . . . without any accommodation." (Doc. 11 at 5).

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "Discrimination can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee." *Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042

(7th Cir. 2020); 42 U.S.C. § 12112(b). Plaintiff seems to allege both forms of discrimination.

###    A.    *Disparate Treatment*

To prevail on a disparate treatment claim, "a plaintiff must show (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019) (internal quotation marks omitted). Disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2.[2] As stated, Plaintiff appears to base her claim on one or all of the following theories: her fever was an actual disability or Defendant perceived her as being disabled because of her fever or possible COVID-19 infection.

###    1.  **Fever as an Actual Disability**

According to the Complaint, Plaintiff's fever began on October 2 and she was recovered on or before October 5 (doc. 1 at 4); neither the Complaint nor Response allege any long-term effects or limitations stemming from the fever. Assuming,

---

[2] "EEOC regulations interpreting the ADA are entitled to deference . . . , unless they are 'arbitrary, capricious, or manifestly contrary to the statute.' " *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 887 (7th Cir. 2019) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,467 U.S. 837, 844 (1984)).

*arguendo*, Plaintiff's fever constitutes a physical impairment, 29 C.F.R. § 1630.2(h)(1),[3] the Complaint falls far short of stating a cognizable claim for relief.

Though the 2008 amendments to the ADA broadened its scope, it did not so expand the Act to cover minor, acute illnesses like the common cold, flu, or garden-variety fevers. *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 824 (7th Cir. 2011); *Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 537 (E.D. Pa. 2016) ("The common cold is precisely the kind of 'transitory and minor' impairment that is not considered a disability under the ADA."). In the Seventh Circuit's words:

> This is a subtle but important point and we wish to be as emphatic about it as we can. The Act is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer . . . either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation.

*Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1052–53 (7th Cir. 1997). This point is based on the understanding that trivial illnesses do not sufficiently limit major life activities to be considered debilitating, even when they require a brief absence from work. Indeed, the very EEOC guidance Plaintiff relies on states as much. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-

---

[3] "A fever is not an illness by itself," *Fever*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/fever (last visited Jan. 7, 2022). The undersigned has not located *any* authority holding a fever unrelated to any diagnosis constitutes a physical impairment meeting the EEOC definition.

rehabilitation-act-and-other-eeo-laws (Dec. 14, 2021) ("Someone infected with the virus causing COVID-19 . . . whose COVID-19 results in mild symptoms similar to the common cold or flu that resolve in a matter of weeks—with no other consequences—will not be substantially limited in a major life activity for purposes of the ADA. . . . This is so even though this person is subject to [the Centers for Disease Control (CDC)] guidance for isolation during the period of infectiousness."). Accepting Plaintiff's position would mean any illness requiring an employee to stay home from work—no matter how minor or fleeting—would immediately trigger ADA protections. That is certainly not the state of the law.[4]

## 2. Perception of Disability

The theory that Defendant perceived Plaintiff as being disabled due to either her fever or COVID-19 fares no better. To be regarded as disabled means "the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.' " 29 C.F.R. § 1630.2(g)(iii).[5]

---

[4] It is worth noting the "transitory and minor" defense to the "regarded as" prong of the definition of disability was enacted with the 2008 amendments to the ADA specifically to combat potential abuse of the provision by those seeking to be considered disabled under the Act for trivial illnesses such as the cold or flu. 29 C.F.R. Appendix to Part 1630. This further demonstrates such trivial illnesses are simply not covered by the ADA.

[5] "It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.' " 29 C.F.R. § 1630.15(f). The instant motion is filed under Rule 12(b)(6); the Court does not consider the "transitory and minor" defense because Complaints need not anticipate defenses, *infra* at 2–3.

The Complaint contains no allegations demonstrating Defendant believed Plaintiff's fever was a disability or that, once it subsided and she was cleared to return to work, it would interfere with her ability to perform her job duties. Again, the necessity for a brief leave of absence to recover from a mild illness does not, by itself, constitute a substantial limitation of major life activities, so Defendant's agreement that Plaintiff should stay home if feverish does not itself demonstrate it believed her fever substantially limited her ability to work. Plaintiff has thus failed to adequately allege Defendant regarded her as disabled due to her fever.

As to COVID-19, Plaintiff spends a considerable portion of her Response arguing COVID-19 can constitute a disability under the ADA, citing recent guidance from the EEOC. The Court does not discount this possibility. But Plaintiff did not have COVID-19. And the Complaint does not suggest Defendant believed Plaintiff had COVID-19. While Plaintiff reported a fever and exposure to COVID-19 and Defendant advised her to stay home per its COVID-19 policy, it does not automatically follow that Defendant regarded Plaintiff as being infected with the virus; Defendant's actions were simply in line with the CDC's guidance to quarantine until COVID-19 is ruled out, *see Quarantine & Isolation*, Ctrs. For Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (Jan. 4, 2022). At any rate, the adverse employment action—Plaintiff's termination—occurred *after* Defendant was seemingly aware Plaintiff's COVID-19 test was negative. (*See* doc. 1 at 4 (alleging Plaintiff tested negative for COVID-19 on October 3, was advised by Defendant that she was cleared to return to work on October 5, and

8

was terminated on October 6)). Nothing about these facts suggest Defendant terminated Plaintiff because it believed her to be infected with COVID-19.

In sum, Plaintiff has failed to adequately allege she was disabled at any time relevant to the Complaint.

B. *Failure to Accommodate*

To prevail on a failure-to-accommodate claim, a Plaintiff must show: "(1) he was a qualified individual with a disability, (2) his employer was aware of his disability, and (3) the employer failed to reasonably accommodate his disability." *Youngman*, 947 F.3d at 1042. As discussed, Plaintiff has failed to adequately allege she has (or had) a disability; she thus cannot sustain a claim for failure to accommodate.

Relatedly, the Seventh Circuit has expressed doubt as to whether a failure-to-accommodate claim can be predicated by a disability established through the perception prong, noting there is a circuit split on the question. *See Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335–36 (7th Cir. 2004). Since, several district courts in this Circuit have held such claims cannot be predicated on the perception prong as a matter of law and have dismissed such claims at both the dismissal and summary judgment stages. *See Wilkes v. City of Fort Wayne*, No. 1:10-CV-169, 2011 WL 3806253, at *10 n.20 (N.D. Ind. Aug. 26, 2011) (collecting cases). The reasoning of these decisions is persuasive, but like the Seventh Circuit, the undersigned will withhold rendering a decision on this question until it is a decisive issue.

9

C.    *Summation*

Plaintiff's claim is a gross mischaracterization of the purpose and protections of the ADA. She registered a mild fever and was cleared to return to work—seemingly fully recovered—in three days. That is very obviously not a disability as contemplated by the ADA. While Plaintiff may, in the end, have a meritorious claim against Defendant stemming from her termination of employment, the Court will not countenance this blatant use of the "spaghetti approach" to litigation. No reasonable person employing common sense could sincerely believe such a fever constituted an ADA-protected disability, and claiming as much borders a violation of Federal Rule of Civil Procedure 11(b)(2).

## II.    Count III Fails to State a Claim for Violation of Illinois Public Policy

Plaintiff's claim for violation of Illinois public policy, coined "retaliatory discharge" in Illinois legal parlance, is premised on the notion that Defendant's decision to effectively penalize Plaintiff for being absent from work due to a fever contravenes Illinois public policy as it relates to combatting the ongoing COVID-19 pandemic.

As a general matter, Illinois is an employment at-will state. "Courts have acknowledged, however, that an employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy." *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 22, 135 N.E.3d 891. As such, Illinois courts recognize the tort of retaliatory discharge. *Id.* "To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged

10

the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy." *Id.* ¶ 23.

Defendant challenges the sufficiency of Plaintiff's pleading as it relates to the second and third elements. Defendant first argues Plaintiff was not terminated in retaliation for her activities. The Court disagrees at this stage. The Complaint and its attachments plausibly allege Plaintiff was terminated, at least in part, because she was absent from work on October 2, 2020, due to a fever, which is a symptom of COVID-19. Therefore, the theory is that Defendant retaliated against Plaintiff for being absent from work.

Plaintiff further alleges current public policy encourages employees to stay home while ill and prohibits employers from penalizing employees "for taking time off work while ill." (Doc. 1 at 9). Plaintiff's theory is similar to the plaintiff's in *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 509, 485 N.E.2d 372, 377 (1985), wherein the plaintiff employee "was discharged in retaliation for his refusal to work in the handling of cobalt 60 while the operations were being conducted in violation of regulations promulgated by the Nuclear Regulatory Commission and published in the Federal Register." In both cases, the employee was terminated for refusing to work in a way that allegedly contravened public policy: in *Wheeler*, the employee refused to work in violation of applicable federal regulations and here, Plaintiff

11

refused to work while ill during a global pandemic. The Illinois Supreme Court held

this theory constituted a cognizable claim for retaliatory discharge. *Id.* at 510–11.[6]

 Plaintiff's claim falters, however, on its source of "clearly mandated public

policy." The Illinois Supreme Court has described "clearly mandated public policy" as

follows:

> There is no precise definition of the term. In general, it can be said that
> public policy concerns what is right and just and what affects the
> citizens of the State collectively. It is to be found in the State's
> constitution and statutes and, when they are silent, in its judicial
> decisions. Although there is no precise line of demarcation dividing
> matters that are the subject of public policies from matters purely
> personal, a survey of cases in other States involving retaliatory
> discharges shows that a matter must strike at the heart of a citizen's
> social rights, duties, and responsibilities before the tort will be allowed.

*Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878–79 (1981)

(citation omitted); *see also Roberts*, 2019 IL 123594, ¶ 24 ("To succeed in a retaliatory

discharge claim, the public policy alleged by a plaintiff must be found in the state or

---

[6] The undersigned notes Defendant's argument that retaliatory discharge claims are recognized in only two settings. (Doc. 8 at 9). It is true the Illinois Supreme Court has, on more than one occasion, stated:

> [A] review of Illinois case law reveals that retaliatory discharge actions
> have been allowed in two settings: where an employee is discharged for
> filing, or in anticipation of filing, a claim under the Workers'
> Compensation Act . . . ; or where an employee is discharged in retaliation
> for the reporting of illegal or improper conduct, otherwise known as
> "whistleblowing."

*Michael v. Precision All. Grp., LLC*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183. In *Wheeler*, the Illinois Supreme Court likened the plaintiff's theory (refusing to work in conditions that violated federal regulations) to the line of cases involving whistleblowing. Perhaps, then, it grouped this theory into the whistleblowing "setting" or overlooked it altogether in making the above statement. At any rate, the undersigned finds Plaintiff's theory here is sufficiently similar to that approved by the Illinois Supreme Court in *Wheeler*. *See also Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 879 (1981) ("[A]ctions for retaliatory discharge have been allowed where the employee was fired for refusing to violate a statute.").

federal constitutions and statutes and, when they are silent, in Illinois or federal case law."). While this explanation is somewhat vague, it is clear from Illinois precedent that public policy in this context must be derived from an applicable mandate.

Here, Plaintiff cites guidance from the Illinois Department of Public Health as her source of public policy. (Doc. 1 at 9, 18–24). This guidance does not carry any coercive power necessary to be considered a mandate; it is not a constitutional provision, statute, regulation, or even an executive order. Indeed, the portion of the guidance relied upon by Plaintiff explicitly states it is not mandatory but rather is a compilation of voluntary measures "that employers are encouraged to consider to promote a healthy work environment and limit the spread of COVID-19." (Doc. 1 at 20). Optional measures are not "clearly mandated." Because Plaintiff has not invoked any "clearly mandated public policy," her claim for retaliatory discharge cannot proceed.

## III.    Leave to Amend

"Although Federal Rule of Civil Procedure 15(a)(2) directs courts to 'freely give leave [to amend] when justice so requires,' courts may deny a proposed amended pleading if the amendment would be futile." *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (quoting *Int'l Union of Operating Engineers, Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287, 296 (7th Cir. 2020)). As Count II fails to advance any cognizable theory of disability discrimination under the ADA, the Court finds any attempt to cure the pleading would be futile. Count II is thus dismissed with prejudice. However, the Court recognizes the possibility that Plaintiff may be able to identify a clearly mandated public policy to cure the deficiencies

13

1:21-cv-01286-JBM-JEH   # 12   Page 14 of 14

identified with respect to Count III. Count III is thus dismissed without prejudice, and Plaintiff may move for leave to file an amended complaint if she is able to identify a clearly mandated public policy that precluded her termination.

CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (doc. 8) is GRANTED; Count II is DISMISSED WITH PREJUDICE and Count III is DISMISSED WITHOUT PREJUDICE. Plaintiff may, consistent with this Order, move for leave to file an amended complaint within fourteen (14) days. Defendant shall Answer the Complaint within fourteen (14) days of the date of this Order.

SO ORDERED.

Entered this 14th day of January 2022.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge