## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MARIA E. CUPI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:21-cv-01286 |
| ) | |
| CARLE BROMENN MEDICAL ) | |
| CENTER, ) | |
| ) | |
| Defendant. ) | |

## ORDER & OPINION

This matter is before the Court on Plaintiff Maria E. Cupi's Motion seeking leave to file an amended complaint. (Doc. 13). The Motion has been fully briefed and is ripe for review. For the following reasons, the Motion is granted.

### BACKGROUND

In January 2022, the Court dismissed Plaintiff's claim alleging retaliatory discharge because she failed to invoke a clearly mandated public policy; the Court permitted her to seek leave to file an amended complaint if she was able to cure this deficiency. (Doc. 12 at 10–14). Plaintiff now seeks leave to file an amended complaint that, *inter alia*, claims her termination violated the general mandate that employers provide a work environment free from hazards that cause "or are likely to cause death or serious physical harm to [their] employees" found in the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 654(a)(1). (Doc. 13).

## DISCUSSION

As stated in the Court's Dismissal Order, "[t]o state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy." *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 23, 135 N.E.3d 891. The Court previously held Plaintiff had satisfied the first two elements at this stage of the proceedings. Plaintiff now attempts to cure her failure to satisfy the third element by invoking OSHA's general mandate that employers provide a safe and healthy work environment, *see* 29 U.S.C. § 654(a)(1). Defendant opposes the Motion, arguing Plaintiff has not adequately connected OSHA's general mandate to her particular set of facts and also that her termination is unlike those in *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 485 N.E.2d 372 (1985), and *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981). (Doc. 16 at 3–6).

"The tort [of retaliatory discharge] seeks to achieve 'a proper balance . . . among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.'" *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 507, 568 N.E.2d 870, 876 (1991) (quoting *Palmateer*, 85 Ill. 2d at 129). Though the tort has been applied in limited scenarios, the Illinois Supreme Court has used rather broad language in describing its application. According to the court, "[w]hen a discharge

contravenes public policy in any way[,] the employer has committed a legal wrong.' "

*Palmateer*, 85 Ill. 2d at 130. It described the meaning of "public policy" as follows:

> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.

*Id.* That said, the court has not consistently required public policy to be explicitly expressed on the books. In *Palmateer*—where the tort was applied to protect a whistleblower—the court noted there was "[n]o specific constitutional or statutory provision requir[ing] a citizen to take an active part in the ferreting out and prosecution of crime," but nevertheless concluded "public policy favors citizen crime-fighters." *Id.* at 132. It went on to state: "There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." *Id.*

The Court finds, contrary to Defendant's argument, OSHA's general mandate is sufficiently connected to Plaintiff's claim at this stage of the proceedings. During the COVID-19 pandemic, the Department of Labor and several states, including Illinois, issued regulations and standards per OSHA's general mandate implementing measures to mitigate the risk of transmitting the virus in the workplace. *See, e.g.*, *Coronavirus Disease (COVID-19) Regulations*, Dept. of Labor, https://www.osha.gov/coronavirus/standards (last visited Mar. 16, 2022). Moreover, the Department of Labor specifically advised that the "General Duty Clause . . . which requires employers to furnish to each worker 'employment and a place of employment, which are free from recognized hazards that are causing or are likely to

cause death or serious physical harm' " applies "to preventing occupational exposure to SARS-CoV-2." *Id.* (quoting § 654(a)(1)); *see also United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 982 (7th Cir. 1999) (OSHA's general duty clause, § 654(a)(1), "requires employers to protect their own employees from obvious hazards even when those hazards are not covered by specific safety regulations imposed by the Act."). Courts have interpreted mandatory COVID-19 mitigation policies to be an adequate source of public policy to sustain a claim for retaliatory discharge in Illinois. *See, e.g., Johnson v. Gerresheimer Glass Inc.*, No. 21-CV-4079, 2022 WL 117768, at *8–9 (N.D. Ill. Jan. 12, 2022); *see also Palmateer*, 85 Ill. 2d at 132 ("There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.").

The Court further finds the facts alleged by Plaintiff fit within the parameters set by the Illinois Supreme Court. Accepting as true Plaintiff's allegations, as is required at this stage of the proceedings, her story is as follows. On October 2, 2020, she registered a fever, a symptom of COVID-19. (Doc. 13-1 at 3). She called into Defendant's COVID-19 hotline—which was created to ensure a safe and healthy workplace during the COVID-19 pandemic as required by OSHA, § 654(a)(1)—and was directed to stay home; she followed that instruction. (Doc. 13-1 at 3–5). She was then terminated upon her return to work, and this absence was cited as one reason for her termination. (Doc. 13-1 at 5–6). This story holds together and plausibly indicates Plaintiff's termination was, in part, retaliation for her absence mandated by Defendant's COVID-19 policy, which was implemented to comply with Defendant's

4

duty under OSHA to provide a safe and healthy workplace, § 654(a)(1). The Court's previous finding that these allegations are sufficiently similar to those alleged in *Wheeler* remain unchanged. (*See* doc. 12 at 11–12).

Defendant nevertheless claims it was in compliance with the OSHA general mandate, as evidenced by its hotline and the fact it directed Plaintiff to stay home while feverish. However, whether Plaintiff was in compliance with the OSHA general mandate is not the operative question.

> In both *Kelsay*[ *v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978),] and *Palmateer*, the court recognized that an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner. In those circumstances, recognition of a cause of action for retaliatory discharge was considered necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy.

*Fellhauer*, 142 Ill. 2d at 508. The operative question is therefore whether Plaintiff's termination for complying with Defendant's COVID-19 procedures frustrated the public policy favoring strong COVID-19 mitigation measures during the height of the pandemic, as mandated by OSHA. By terminating Plaintiff for being absent on October 2, Defendant implies Plaintiff should have come to work on that day. Requiring employees to work while presenting COVID-19 symptoms clearly frustrates and undermines that public policy. And even without that implication, Defendant terminated Plaintiff for adhering to its own COVID-19 mitigation procedures. That in and of itself offends public policy.

Because the Court finds Plaintiff's allegations fit within the parameters set by the Illinois Supreme Court, the Court rejects Defendant's contention that Plaintiff's theory expands the tort of retaliatory discharge. There is simply no cognizable

difference between complying with the rules and refusing to break them in this instance; Plaintiff's act of remaining home while feverish is equivalent to refusing to work while feverish. The only difference between this case and *Wheeler* on this point is that, unlike in *Wheeler*, Defendant instructed Plaintiff to comply with the applicable rule rather than violate it, so Plaintiff did not have to explicitly refuse to work while feverish. But that difference in no way undermines the key analogy to *Wheeler*: both claimants were terminated for their decision to stand by the applicable rules. Terminating an employee for following the rules is as problematic as terminating an employee for refusing to break them.

At this stage of the proceedings, Plaintiff has adequately alleged a claim for retaliatory discharge. Plaintiff's Motion to Amend/Correct (doc. 13) is therefore GRANTED. Plaintiff is directed to correct the issues identified in Defendant's Response and file her Amended Complaint within seven (7) days of the date of this Order.

SO ORDERED.

Entered this 16th day of March 2022.

                                            s/ Joe B. McDade
                                            JOE BILLY McDADE
                                      United States Senior District Judge