E-FILED
Friday, 18 March, 2022 10:49:11 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| MARIA E. CUPI, | ) | |
| Plaintiff, | ) | CASE NO.: 1:21-cv-01286 |
| | ) | |
| Vs. | ) | |
| CARLE BROMENN MEDICAL CENTER, | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

**and demand for jury trial.**

COMES NOW the Plaintiff, MARIA E. CUPI, by and through the undersigned attorney and files this complaint against the Defendant, CARLE BROMENN MEDICAL CENTER, and states as follows:

**INTRODUCTION**

1. This is an action for wrongful termination based on gender discrimination, retaliatory discharge in violation of Illinois public policy, and failure to pay wages.

**PARTIES**

2. Plaintiff, MARIA E. CUPI (hereinafter referred to as "Mrs. Cupi"), is a citizen of the State of Illinois who resides at 1414 Camden St., Pekin, IL 61554 and is a former employee of CARLE BROMENN MEDICAL CENTER in Normal, Illinois.

3. Plaintiff is informed and believes, and thereon alleges, that Defendant, Carle BroMenn Medical Center, is a not-for-profit corporation in the State of Illinois and citizen of the

state of Illinois, which maintains its principal place of business at 1304 Franklin Ave., Normal, IL 61761.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

5. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with her federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

6. Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

7. Pursuant to Local Rule CDIL-LR 40.1(A) of this District, assignment to the Peoria Division of this Court is proper because all or most of the events giving rise to Plaintiff's claims occurred in McLean County, Illinois.

**ALLEGATIONS OF FACT**

8. Mrs. Cupi was an employee of Carle Bromenn Medical Center (hereinafter referred to as the "hospital").

9. Mrs. Cupi became an employee of Advocate BroMenn Medical Center in July 2019 and was promoted to Lead Officer in the department of Public Safety and Security in January 2020.

10. The Carle Foundation, dba Carle Health, acquired Advocate BroMenn Medical Center in 2020 and changed its name to Carle Bromenn Medical Center.

11. Mrs. Cupi's supervisor was John Avolio, the Security Manager, who is a male.

12. Mr. Avolio supervised at least 20 other employees besides Mrs. Cupi, 17 of whom were male.

13. Mr. Avolio would frequently call Mrs. Cupi "Farrah Fawcett", who is known to Mrs. Cupi and her co-workers as a 1980's sex symbol.

14. Mr. Avolio would frequently brag about his younger years working at Palos Hospital and stated on numerous occasions, "All the nurses called me golden balls, because I was so fit, tan, and good looking."

15. On or about on June 3, 2020, Matt Heaton, another Lead Supervisor, called Mrs. Cupi a "Little Bitch". Mrs. Cupi complained to her supervisor, John Avolio, about this, but to her knowledge, the incident was ignored.

16. On October 2, 2020, Mrs. Cupi was exposed to COVID-19 and informed Mr. Avolio that she had a fever and would not report to work that day, and she called the 'hospital's COVID hotline'.

17. The 'hospital's COVID hotline' was instituted and created by Defendant in compliance with the mandate set out in the Occupational Safety and Health Act of 1970 ("OSHA") which has as its "purpose and policy, through the exercise of its powers to regulate commerce among the several States … to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources … by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under the Act." 29 U.S.C. §651(b)(3)

18. OSHA further mandates that:

> (a) Each employer—
>
> (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
>
> (2) shall comply with occupational safety and health standards promulgated under this chapter.
>
> (b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

29 U.S.C. §654

19. In compliance with the OSHA mandate to create a safe and healthy work environment for its employees, Defendant created the COVID hotline and in further compliance

with the OSHA mandate, Plaintiff likewise complied by calling in to said hotline when she realized she had been exposed to COVID 19.

20. Defendant is a business affecting interstate commerce and is subject to the mandates of OSHA and the requirements set forth above.

21. The COVID hotline informed Mrs. Cupi that she could not work her scheduled shift that day and sent a confirmation email to her and Mr. Avolio stating that her job would be protected under the hospital's COVID-19 policy. A true and correct copy of the message from the COVID hotline is attached hereto as Exhibit "1" and incorporated herein by reference.

22. On October 3, 2020, Mrs. Cupi sought a COVID-19 test, which came back negative.

23. On October 5, 2020, Mrs. Cupi received an email from the hospital's COVID hotline stating that she was cleared to return to her job duties.

24. On her next day of work, October 6, 2020, Mr. Avolio requested, via email, that Mrs. Cupi come into work early to help move the mental health patients from the old Mental Health Unit to the new Mental Health Unit.

25. Upon her early shift arrival to the hospital, Mr. Avolio called Mrs. Cupi's cell phone and asked her to come to his office. When she entered Mr. Avolio's office, he and Michelle Rush, a Human Resources Officer, were waiting.

26. Mr. Avolio and Ms. Rush gave Mrs. Cupi a termination letter and told her that she violated the hospital's attendance policy. A true and correct copy of the termination letter is attached hereto as Exhibit "2" and incorporated herein by reference.

27. The hospital terminated the employment of Mrs. Cupi, citing absenteeism including the absence on October 2, 2020 as an occurrence under the hospital's attendance policy.

28. In fact, Defendant's termination of Plaintiff for her alleged absenteeism came about as a result of her excused and mandated absence as instructed by the COVID hotline.

29. Defendant's termination of Plaintiff was a retaliatory discharge of Plaintiff for her compliance with the clearly mandated public policy as described above and as mandated by OSHA.

30. The hospital did not pay Mrs. Cupi wages for October 6, 2020 even though she had officially clocked into the hospital's employee time keeping system.

31. Other male employees of the hospital in Mrs. Cupi's department have not been terminated for similar absenteeism situations.

32. The hospital's attendance policy states, "Disciplinary action should not be taken without considering unique or mitigating circumstances, and examining the details of each employee's work record."

33. One of the absence occurrences cited by the hospital took place on September 23, 2020 when Mrs. Cupi was on the way to the hospital for her 2p.m. shift and was delayed due to an overturned semi-tractor trailer tanker truck which was carrying hazardous liquids on Interstate 174. The interstate was blocked for several hours, while the Illinois State Police re-routed vehicles off the interstate.

34. Mrs. Cupi made several phone calls to the hospital giving updates about her location and approximate time she anticipated arriving at the hospital. She clocked in at 3:03p.m.

35. Local newspapers contained stories about the accident. A true and correct copy of a local news report of the incident is attached hereto as Exhibit "3" and incorporated herein by reference.

36. Mrs. Cupi was not a probationary employee at the time of her termination.

37. Mrs. Cupi received two performance evaluations while working at the hospital. Both evaluations were rated “exceeds expectations”.

38. Alex Anderson, a male, took over Mrs. Cupi’s job duties after her termination.

39. At least four male co-workers in Mrs. Cupi’s department had over two attendance policy violation occurrences and maintained their employment at the hospital.

40. At the time of her termination from the hospital, Mrs. Cupi was paid annual compensation in excess of $45,700.00. She also worked at least 200 hours of overtime the prior nine months and received about $6,500.00 of overtime compensation in addition to her salary.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

41. Plaintiff timely filed charges with the Illinois Department of Human Rights (“IDHR”), which were cross-filed with the United States Equal Employment Opportunity Commission (“EEOC”).

42. IDHR issued their NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS AND RIGHT TO COMMENCE AND ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE (the “IDHR Right to Sue Notice”) on July 15, 2021. A true and correct copy of the IDHR Right to Sue Notice is attached hereto as Exhibit "4" and incorporated herein by reference.

43. EEOC issued their Notice of Right to Sue on September 24, 2021. A true and correct copy of the EEOC Notice of Right to Sue is attached hereto as Exhibit "5" and incorporated herein by reference.

44. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

**COUNT I**

(Wrongful Termination Based on Gender Discrimination)

45. Plaintiff repeats and realleges paragraphs 8 through 44 as if fully set forth herein.

46. It is an unlawful employment practice for an employer to discharge any individual because of such individual's sex under Title VII of the Civil Rights Act of 1964. 42 U.S. Code § 2000e–2

47. Mrs. Cupi is a female and is a member of a protected class under Title VII because of her sex.

48. Mrs. Cupi's performance evaluations indicate that she was exceeding the hospital's performance expectations.

49. Mrs. Cupi suffered an adverse employment action when the hospital, and its agents and employees, terminated Mrs. Cupi's employment.

50. The hospital cited the reason for Mrs. Cupi's termination was that she violated the hospital's attendance policy and documented three violation occurrences. Mrs. Cupi was treated less favorably than similarly-situated individuals who were not in her protected class, since four other male employees in the department remained employees with the same number or more occurrences.

51. Mrs. Cupi's manager and other employees frequently used derogatory language directed at Mrs. Cupi's sex, demonstrating a clear discriminatory bias against Mrs. Cupi's protected class.

52. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

53. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her sex.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT II**

(Retaliatory Discharge in Violation of Illinois Public Policy)

54. Plaintiff repeats and realleges paragraphs 8 through 44 as if fully set forth herein.

55. Defendant, hospital is subject to the clearly mandated policies of OSHA as more particularly described above.

56. In compliance with such mandated policy and presumably with the purpose of establishing a safe and healthy environment for its employees in these unusual times and circumstances associated with the COVID 19 pandemic, the hospital created a COVID hotline for its employees to call in for guidance for, among other things, their work schedules and absences in connection with COVID exposure.

57. Likewise, in compliance with the mandates of OSHA, Plaintiff followed the hospital's plan for a safe and healthy work environment and called in to the hotline and reported her situation of possible COVID exposure and the presence of her fever, a known COVID symptom.

58. The hospital's own COVID hotline informed Mrs. Cupi that her job was protected because of this fever and she should remain home until the confirmation of her contracting COVID or a negative test result.

59. The hospital terminated Mrs. Cupi on her very next workday citing as an attendance violation occurrence for October 2, 2020, the day that Mrs. Cupi had a fever.

60. At the time of her termination, Plaintiff was an employee of the Defendant.

61. Defendant's actions in terminating Plaintiff was a retaliatory discharge for Plaintiff's following clearly mandated conduct.

62. Notwithstanding Illinois' general rule of at-will employment, the exception arises where there has been a retaliatory discharge of the employee.

63. Defendant discharged Plaintiff in retaliation for Plaintiff's activities in violation of a clear mandate of public policy which source is the applicable federal statutes set forth above by OSHA.

64. This retaliatory discharge is a matter that strikes at the heart of plaintiff's social rights, duties, and responsibilities as Plaintiff was following her responsibilities in calling Defendant's COVID hotline as instructed and stayed home from work as instructed, only to be fired for such activities.

65. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

66. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to abide by Defendant's policies and to comply with the mandates of OSHA.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT III**

(Failure to Pay Wages Under the Illinois Wage Payment and Collection Act)

67. Plaintiff repeats and realleges paragraphs 8 through 44 as if fully set forth herein.

68. It is a violation of the Illinois Wage Payment and Collection Act to not pay employees all wages that they are due under the Act. 820 ILCS 115 *et seq*

69. The Defendant called Mrs. Cupi into work early on the day it terminated her employment and allowed her to clock into the hospital's time keeping system.

70. The Defendant allowed Mrs. Cupi to start her shift, but did not pay her any wages for that day.

71. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

72. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right be paid fair wages.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IV**

(Failure to Pay Wages Under the US Fair Labor Standards Act)

73. Plaintiff repeats and realleges paragraphs 8 through 44 as if fully set forth herein.

74. It is a violation of the US Fair Labor Standards Act to not pay employees all wages that they are due under the Act. 29 U.S.C. §§ 201-219

75. The Defendant called Mrs. Cupi into work early on the day it terminated her employment and allowed her to clock into the hospital's time keeping system.

76. The Defendant allowed Mrs. Cupi to start her shift, but did not pay her any wages for that day.

77. Defendant willfully and intentionally refused to pay Plaintiff's wages as required by the Fair Labor Standards Act. Defendant remains owing Plaintiff these wages.

78. Wherefore, the Plaintiff requests double damages and reasonable attorney fees from Defendant pursuant to the Fair Labor Standards Act as cited above, to be proven at the time of trial for all wages still owing from Plaintiff's entire employment period with Defendant or as much as allowed by the Fair Labor Standards Act along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances.

## JURY DEMAND

79. Plaintiff demands trial by jury on all counts of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

80. For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

81. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

82. For punitive damages in an amount sufficient to deter similar misconduct from the Defendant;

83. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

84. For costs of suit incurred herein;

85. For attorney's fees pursuant to 42 U.S.C. § 1988; and

86. For whatever additional relief this Court deems just and equitable.

Respectfully submitted,

Maria E. Cupi

By: /s/ George W. Svoboda
Attorney for Plaintiff, Maria E. Cupi

George W. Svoboda
Atty #6220463
The Law Office of George W. Svoboda
37063 N Kimberwick Lane
Wadsworth, IL 60083
(224) 360-0696 – Phone
Email: george@georgesvobodalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2022, I electronically filed the foregoing FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification to:

Brian M. Smith
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
301 N. Neil St., Suite 505
Champaign, IL 61820
Email: bsmith@heylroyster.com

Mitchell J. Kavanagh
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
300 Hamilton Blvd.
P. O. Box 6199
Peoria, IL 61601-6199
Email: mkavanagh@heylroyster.com

By: /s/ George W. Svoboda
Attorney for Plaintiff

EXHIBIT "1"

9:57

correspond with the sick bank/quarantine entry after the utilization of 24 hours of paid time off and/or unpaid time off is entered only if paid time does not exist. Sick bank/quarantine pay is a paid benefit in which benefit hours are only entered to bring an employee up to their regularly scheduled hours and will not be added in addition to worked hours that total the employees FTE status and/or regularly scheduled hours.

***Job Protection***

During this time while you are designated to be on self-quarantine by the COVID-19 hotline, your job will be protected. If after your self-quarantine

Reply to all

Please sign in to Maria .Cupi@advocatehealth.com ... SIGN IN

**EXHIBIT "2"**

## Notice of Termination

| **Employee Name:** Maria Cupi | **Date: 10/ 06/2020 Hire Date: 7/22/2019** |
|---|---|
| **Employee ID Number: 115216** | **Department: Security** |
| **Job Title: Lead Officer** | **Manager's Name: John Avolio** |

| **Disciplinary History:** Level of Discipline | Date(s) | Subject |
|---|---|---|
| Verbal Warning | | |
| First Written Warning | | |
| Final Written Warning | 8/27/2020 | Misconduct/Performance |

---

## Reason for Termination of Employment

**Provide details of the Offense:**

Maria Cupi's employment with Carle terminates effectively immediately for her violation of Carle Policy HR 601 – Attendance. Since receiving her Final Written Warning, Maria Cupi has had the following occurrences of unscheduled absences:

- 9/3 Late, Scheduled 2pm, clock in 2:05pm ½ occurrence
- 9/5 Late, scheduled 6pm, clock in 6:05pm ½ occurrence
- 9/6 Late, scheduled 6pm, clock in 6:01pm ½ occurrence
- 9/23 Late, scheduled 2pm, clock in 3:03pm ½ occurrence
- 10/2 Called off with fever 1 occurrence

These occurrences total three (3) occurrences of unscheduled absences in a thirty-day period. Per policy HR601, two (2) occurrences of unscheduled absences within a thirty-day period will be considered excessive absenteeism and a violation of the Attendance Policy.

**As a result of the above stated reasons, and given that she has progressed through all the disciplinary steps, Maria Cupi's employment with Carle will be terminated, effective immediately.**

*I acknowledge that I have read and have been given the opportunity to comment on the above.*

Employee Signature ______________________ Date ______________

Supervisor/Manager Signature ______________________ Date ______________

**Employee Comments: (Optional)**

Please forward completed form to Human Resources, CATF1.



EXHIBIT “3”











# Driver cited after semi overturns on I-74; lanes closed for extended period

September 23, 2020  11:45 am

25 News

NEWS, TOP STORIES

    

---

UPDATE 9:00 P.M. -- Interstate 74 has been reopened between Goodfield and Carlock, and the crash scene has been cleared.




UP

**EXHIBIT "4"**

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

| | | |
|---|---|---|
| MARIA E. CUPI, COMPLAINANT, | ) | CHARGE NO. 2021SF1501 |
| AND | ) | EEOC NO. 21BA10716 |
| CARLE BROMENN MEDICAL CENTER, RESPONDENT. | ) | |

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE**

For Complainant

George W. Svoboda
The Law Office of
George W. Svoboda
37063 N. Kimberwick Lane
Wadsworth, IL 60083

For Respondent

Chief Executive Officer
Carle Bromenn Medical Center
1304 Franklin Avenue
Normal, IL 61761

**Date Perfected Charge Filed:** Apr 26, 2021

**Date Opt Out Request Filed:** Jun 23, 2021

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 95 days from the date of this Notice and Order, as identified above.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and administratively close the charge of civil rights violation(s).

ENTERED ON July 15, 2021

DEPARTMENT OF HUMAN RIGHTS

BY: [signature]
Brent A. Harzman, Manager
Charge Processing Division

EEOC Form 161-B (11/2020)

**EXHIBIT "5"**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Maria E. Cupi**
**c/o George W. Svoboda, Esq.**
**The Law Office of George W. Svoboda**
**37063 N. Kimberwick Lane**
**Wadsworth, IL 60083**

From: **Chicago District Office**
**230 S. Dearborn**
**Suite 1866**
**Chicago, IL 60604**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2021-00716** | **Daniel Lim, State & Local Coordinator** | **(312) 872-9669** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Julianne Bowman/jwa

**Julianne Bowman,**
**District Director**

9/24/2021
*(Date Issued)*

Enclosures(s)

cc:

**CARLE BROMENN MEDICAL CENTER**
**c/o Chief Executive Officer**
**1304 Franklin Ave**
**Normal, IL 61761**